**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                 v.                                      **1:14-cr-30**
                                                          **(GLS)**

**GLENDON SCOTT CRAWFORD,**

                 **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE GOVERNMENT:**<br>HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>James T. Foley U.S. Courthouse<br>445 Broadway, Room 218<br>Albany, NY 12207-2924 | RICHARD D. BELLISS<br>SEAN K. O'DOWD<br>STEPHEN C. GREEN<br>Assistant U.S. Attorneys |
| **FOR THE DEFENDANT:**<br>Luibrand Law Firm, PLLC<br>950 New Loudon Road<br>Latham, NY 12110 | KEVIN A. LUIBRAND, ESQ. |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

     Defendant Glendon Scott Crawford has been charged, in a three-count indictment, with attempt to produce and use a radiological dispersal device, *see* 18 U.S.C. § 2332h(a), conspiracy to use a weapon of mass

destruction, *see id.* § 2332a(a)(2)(C), and distribution of information relating to weapons of mass destruction, *see id.* § 842(p)(2)(A).  (Dkt. No. 22.)  Pending is Crawford's omnibus motion seeking dismissal of counts one and two of the indictment, an order precluding the government from introducing evidence at trial regarding Crawford's connections with the Ku Klux Klan and his opinions of certain government officials and entities under Federal Rule of Evidence 404, a *Massiah*[1] hearing, and an order directing the government to produce *Brady*[2] material and other items of discovery.  (Dkt. No. 48.)  For the reasons that follow, Crawford's motion is denied in its entirety.

## II.  Background

On June 18, 2013, the government filed a criminal complaint, with an attached affidavit outlining a nearly fourteen-month investigation into Crawford's alleged attempt to secure a device "capable of killing human targets silently and from a distance with lethal doses of radiation."  (Dkt. No. 1 ¶ 7.)  By way of summary, and as alleged in the criminal complaint, beginning in April 2012, Crawford sought financing for his proposed

---

[1] *See Massiah v. United States*, 377 U.S. 201 (1964).

[2] *See Brady v. Maryland*, 373 U.S. 83 (1963).

acquisition of an x-ray system, to which he would attach a "remote initiation device" so that it could be used "as a lethal radiation emitting device." (*Id.* ¶ 9.)  Over the course of approximately the next year, Crawford communicated with two groups regarding his scheme, both of which included undercover government agents and/or confidential human sources.  (*Id.* ¶¶ 9-11.)  He also "recruited" a coworker "to assist him with the design and construction of a remote initiation device," ultimately resulting in the necessary parts being purchased and delivered to him.  (*Id.* ¶ 12.)  Further, on several occasions, Crawford traveled to North Carolina to meet with individuals who were believed to be members of the Ku Klux Klan, in order to present his plans to them and request their financial support.  (*Id.* ¶ 11.)

Throughout the investigation, the government applied for and received judicial authorization to monitor communications on Crawford's cellular telephones.  (*Id.* ¶ 13.)  The affidavit in support of the criminal complaint details numerous telephone conversations and text message communications between Crawford and his associates regarding his plans for the device and his efforts to acquire the necessary parts to construct it.  (*See generally id.*)  Ultimately, a meeting was arranged on June 18, 2013,

3

at which time Crawford was told he would be given access to an x-ray system that he could assemble and test.  (*Id.* ¶ 181.)  Crawford was arrested on that date.  (Dkt. No. 48 at 2.)

On January 16, 2014, Crawford was indicted.  (Dkt. No. 22.)  Crawford filed the pending motion, seeking various forms of relief, on March 30, 2015.  (Dkt. No. 48.)

### III.  Discussion

**A.    Sufficiency of the Indictment**

Crawford first argues that counts one and two of the indictment should be dismissed because the elements of the pertinent underlying offenses have not been sufficiently alleged, the statutes on which they are based are unconstitutionally vague, and the government cannot prove that Crawford committed the charged offenses.  (Dkt. No. 48 at 3-8.)  The government opposes each of these arguments.  (Dkt. No. 54 at 1-11.)  For the following reasons, the court agrees with the government.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure governs the nature and contents of indictments and provides that "[t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  The Second Circuit has

4

"consistently upheld indictments that 'do little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (quoting *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975)). Nonetheless, the court must examine the indictment as a whole, accept as true the facts alleged, and determine only whether the indictment is valid on its face. *See Costello v. United States*, 350 U.S. 359, 363 (1956); *Walsh*, 194 F.3d at 44; *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998).

As relevant to count one here, 18 U.S.C. § 2332h(a)(1)(B) states that:

> it shall be unlawful for any person to knowingly produce, construct, otherwise acquire, transfer directly or indirectly, receive, possess, import, export, or use, or possess and threaten to use . . . any device . . . that is capable of and designed or intended to endanger human life through the release of radiation or radioactivity.

Count one of the indictment alleges that Crawford "did knowingly attempt to produce, construct, acquire, transfer, receive, possess, and use a device capable of and designed and intended to endanger human life through the release of radiation and radioactivity." (Dkt. No. 22 at 1.) Crawford's

5

conclusory assertion that the additional factual allegation in the indictment regarding "an industrial-grade x-ray system that [he] planned to modify so that it could be activated from a remote location," (*id.*), somehow makes the charge infirm, (Dkt. No. 48 at 4-6), is unavailing.  The court is equally unpersuaded by Crawford's argument that "inclusion of the word 'use' without a definition is unconstitutionally vague." (*Id.* at 6-7.)  The ordinary meaning of the word "use" in the context of this statute is readily understandable, and, thus, its inclusion in the statute does not render the provision unconstitutionally vague.  *See United States v. Desposito*, 704 F.3d 221, 226-27 (2d Cir. 2013).

Furthermore, with respect to count two, 18 U.S.C. § 2332a(a)(2)(C) makes it unlawful to "use[ ], threaten[ ], or attempt[ ] or conspire[ ] to use, a weapon of mass destruction . . . against any person or property within the United States, [when] . . . any perpetrator travels in . . . interstate . . . commerce in furtherance of the offense."  Citing this statute, count two alleges that Crawford "conspired to use a weapon of mass destruction . . . against persons and property within the United States, and traveled in interstate commerce in furtherance of such offense." (Dkt. No. 22 at 2.)  Crawford baldly asserts that the government has no evidence

6

demonstrating that he "conspired to 'use' a weapon of mass destruction" because "[t]he claimed x-ray equipment was not even assembled at the time that Crawford was in the presence of the equipment" on the date of his arrest. (Dkt. No. 48 at 8.) However, as noted by the government, whether the device at issue was fully assembled or not at that particular time is of no moment, as a conspiracy requires only "'an overt act to effect the object of the conspiracy,'" in addition to "'an agreement among the conspirators'" with the "'specific intent to achieve the objective of the conspiracy.'" (Dkt. No. 54 at 10 (quoting *United States v. Pinckney*, 85 F.3d 4, 8 (2d Cir. 1996).) Crawford's argument with respect to count two thus fails.

While the instant indictment is sparse in detail, it does comport with Rule 7(c)(1) of the Federal Rules of Criminal Procedure. It recites the approximate time and location of the attempt to produce, construct, acquire, transfer, receive, possess, and use a radiological dispersal device, as well as the conspiracy to use a weapon of mass destruction, specifies the object of the conspiracy, alleges an illicit agreement between Crawford and others, and cites the underlying statutory authority for both counts. (Dkt. No. 22 at 1-2); *see United States v. Macklin*, 927 F.2d 1272, 1276 (2d

7

Cir. 1991); *United States v. Benjamin*, 72 F.Supp.2d 161, 168-69 (W.D.N.Y. 1999). Accordingly, Crawford's motion to dismiss counts one and two of the indictment on this basis is denied.

## B.     Outrageous Government Conduct

Crawford next argues that the indictment should be dismissed because the government engaged in outrageous conduct during its investigation, constituting a violation of his due process rights. (Dkt. No. 48 at 8-16.) The government contends that the indictment should not be dismissed based on Crawford's allegations, as its investigative activities do not rise to the level of outrageous government misconduct. (Dkt. No. 54 at 11-18.) The court agrees with the government.

"The Supreme Court has suggested that in an extreme case, [g]overnment involvement in criminal activity might be 'so outrageous that due process principles would absolutely bar the [g]overnment from invoking judicial processes to obtain a conviction.'" *United States v. Rahman*, 189 F.3d 88, 131 (2d Cir. 1999) (quoting *United States v. Russell*, 411 U.S. 423, 431-32 (1973)); *see United States v. Cuervelo*, 949 F.2d 559, 565 (2d Cir. 1991) ("[T]o obtain dismissal of an indictment based upon a claim of outrageous governmental conduct, a defendant must

8

establish that the government engaged in outrageous behavior in connection with the alleged criminal events and that due process considerations bar the government from prosecuting [him]." (citations omitted)). "However, only [g]overnment conduct that shocks the conscience can violate due process." *Rahman*, 189 F.3d at 131 (internal quotation marks and citations omitted). "Ordinarily such official misconduct must involve either coercion, or violation of the defendant's person." *United States v. Schmidt*, 105 F.3d 82, 91 (2d Cir. 1997) (citing *Watts v. Indiana*, 338 U.S. 49, 55 (1949); *Rochin v. California*, 342 U.S. 165, 172 (1952)). "It does not suffice to show that the government created the opportunity for the offense, even if the government's ploy is elaborate and the engagement with the defendant is extensive," and actions such as "feigned friendship, cash inducement, and coaching in how to commit the crime" do not rise to the level of outrageous conduct that violates due process. *United States v. Al Kassar*, 660 F.3d 108, 121 (2d Cir. 2011). In light of the deference given to law enforcement's selection of investigative techniques, "the burden of establishing outrageous investigatory conduct is very heavy." *Rahman*, 189 F.3d at 131.

      The gravamen of Crawford's argument here is that he would not, and

9

could not, have engaged in the alleged offenses without the guidance and assistance of the undercover government agents. (Dkt. No. 48 at 8-16.) He notes that "[t]he most blatant evidence that the alleged scheme was a government-staged production was the financial support given to [Crawford] by the government," and, in addition, notes several alleged instances of involvement by government agents in the scheme to acquire and construct a radiation-emitting device, including acquiring parts and arranging meetings. (*Id.* at 12.) However, even assuming the truth of Crawford's contentions, the court is not persuaded that the conduct alleged by Crawford, as a matter of law, constitutes outrageous government conduct that violated his due process rights. As an initial matter, the Second Circuit has explicitly held that "financial and ideological inducements are not outrageous conduct," *Al-Kassar*, 660 F.3d at 122, and, more generally, has recognized the government's frequent use of undercover investigations and found it to comply with due process principles, *see Rahman*, 189 F.3d at 131. Furthermore, despite Crawford's contentions, the Second Circuit has held that "government creation of the opportunity to commit an offense, even to the point of supplying defendants with materials essential to commit crimes, does not exceed due

process limits." *United States v. Cromitie*, 727 F.3d 194, 219 (2d Cir. 2013) (citing *Russell*, 411 U.S. at 431-32). That is exactly the conduct that Crawford argues the government engaged in here. (Dkt. No. 48 at 12.) Accordingly, Crawford has not established outrageous government conduct as a basis to dismiss the indictment.

## C. Evidentiary Issues

Crawford also seeks to preclude the government from making any reference at trial to his association with the Ku Klux Klan, or to his negative opinions of certain government officials and entities, pursuant to Federal Rule of Evidence 404's prohibition on the use of character evidence. (Dkt. No. 48 at 17-18.) The government argues that the disputed evidence will not be offered as character evidence, and, instead, is direct evidence of the offenses alleged. (Dkt. No. 54 at 19-26.) The court agrees with the government's assessment of the evidentiary principles at issue here. (*Id.*) Briefly, based on the government's recitation of the facts, the evidence of Crawford's connections to, and interactions with, the Ku Klux Klan, as well as that of his expressed negative views of certain government officials, appears "inextricably intertwined with the evidence regarding the charged offense," and is thus admissible. *United States v. Kaiser*, 609 F.3d 556,

11

...

570 (2d Cir. 2010). This portion of Crawford's motion is therefore denied, with leave to renew should the facts adduced at trial vary from those asserted by the government in its memorandum.

**D.     Suppression of Statements Made to Jailhouse Informant**

Crawford next seeks a hearing, pursuant to *Massiah v. United States*, 377 U.S. 201 (1964), "to ascertain the government's role" in obtaining certain admissions he made "to an unidentified inmate at the Warren County Correctional Facility" after he had been arraigned, who, he asserts, was in fact working with the government as a confidential informant. (Dkt. No. 48 at 18-20.) In response, the government attests that it "will not use any statements of the informant against the defendant at trial," (Dkt. No. 54, Attach. 1 ¶ 5), and, accordingly, this portion of Crawford's motion is denied as moot. (Dkt. No. 54 at 26); *see United States v. Burke*, No. 09 CR 135, 2009 WL 4263635, at *4 (E.D.N.Y. Nov. 24, 2009) (denying motion to suppress as moot where the government indicated it would not introduce disputed statements at trial); *United States v. Hernandez*, 628 F. Supp. 190, 191 n.4 (S.D.N.Y. 1986).

**E.     Government Disclosures**

Lastly, Crawford seeks an order directing the government to produce

12

all *Brady* material related to a potential defense of entrapment, as well as specific audio recordings he asserts were omitted from the government's disclosures.  (Dkt. No. 48 at 20-24.)  The government maintains that it has complied with its disclosure obligations under *Brady* and otherwise, (Dkt. No. 54 at 26-29), and, accordingly, this portion of Crawford's motion is denied.

The court's authority to order discovery is governed by the Federal Rules and the *Brady* doctrine.  See Fed. R. Crim. P. 16; *United States v. Armstrong*, 517 U.S. 456, 461 (1996).  Rule 16(a)(1) specifies the information subject to discovery, and internal government documents are not included.  In fact, Rule 16(a)(2) specifically provides that "[e]xcept as permitted by Rule 16(a)(1) . . . this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made . . . in connection with investigating or prosecuting the case."

Here, Crawford first seeks "all text messages and email exchanges among and between the undercovers pertaining to Crawford."  (Dkt. No. 48 at 20-22.)  He contends that video evidence shows undercover agents "communicating on cell phones during periods of time they are in the presence of Crawford," and speculates that "[t]hese communications -

13

whether by email or text - would predictably involve discussing the activities of the agents, directions to the agents, and likely directions on how to convince Crawford to move forward in the possible commission of the crimes." (*Id.* at 21-22.)  He also claims that "[t]here would also be . . . memoranda[ ] among the undercovers and superiors on strategies to move Crawford along toward committing crimes." (*Id.* at 22.)  However, what Crawford appears to seek is speculative at best, and certainly lacks the specificity required for the court to evaluate any potential exculpatory evidence, which may or may not exist.  The government affirmatively attests that it is aware of its disclosure obligations under Rule 16 and *Brady*, and that it has disclosed all *Brady* material, (Dkt. No. 54, Attach. 1 ¶¶ 6-7), and the court presumes the government has met its obligations of disclosing such exculpatory material to the extent it exists.  *See United States v. Vasconcellos*, 658 F. Supp. 2d 366, 374 (N.D.N.Y. 2009) ("[T]he government has certified compliance with its current and continuing obligation to disclose exculpatory information, and [the defendant] has offered no facts suggesting the contrary."); *United States v. Robinson*, No. 93-CR-298, 1994 WL 92204, at \*2 (N.D.N.Y. Mar. 14, 1994) (denying defendant's motion seeking disclosure where government attested that it

14

had disclosed all required evidence). Crawford has failed to particularize his request such that it would thwart the government's assertion to the contrary.

Regarding Crawford's final request seeking disclosure of certain audio "recordings that appear missing from the discovery response," (Dkt. No. 48 at 22-24), the government asserts that it has responded to Crawford's requests, (Dkt. No. 54 at 28-29; Dkt. No. 54, Attach. 1 ¶ 8), and, in its submissions, points to where the specific items Crawford seeks may be found in the government's disclosures, (Dkt. No. 54, Attach. 1 ¶¶ 9-10). If further disputes arise, the parties are free to bring them to the court's attention at the appropriate time.

## IV. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Crawford's motion (Dkt. No. 48) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 2, 2015
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court