UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,
                                Plaintiff,

                                                            14-CR-30(GLS)

      -against-

GLENDON SCOTT CRAWFORD,
                                Defendant.

## DEFENDANT GLENDON SCOTT CRAWFORD'S SENTENCING MEMORANDUM

**I.     Introduction**

On or about June 17, 2013, a criminal complaint was filed in the United States District Court for the Northern District of New York charging Mr. Glendon Scott Crawford with the crime of Conspiracy to provide material support, or resources, intending that they be used in preparation for, or in carrying out, a violation of Title 18 U.S.C. § 2332 (use of a weapon of mass destruction) from on or about April 2012 through June of 2013.  On or about January 17, 2014, an Indictment was filed charging Mr. Crawford with three counts, including Attempting to Produce or Use a Radiological Dispersal Device, in violation of 18 U.S.C. §§ 2332h(a) & (c)(1), Conspiracy to Use a Weapon of Mass Destruction, in violation of 18 U.S.C. 2332a(a)(2)(C), and Distribution of Information Relating to Weapons of Mass Destruction, in violation of section 18 U.S.C. §§ 842(p)(2)(A), 2332a, 844(a)(2).  On August 21, 2016, Mr. Crawford was found guilty of all three charges after a jury trial.

**II.    Background of Glendon Scott Crawford**

Glendon Scott Crawford, age fifty-two (52), was born on April 19, 1964 in Schenectady, New York to the marital union of Thomas Crawford and Carolyn Davis.  Mr. Crawford was the youngest of seven children.  For the first several years of his life, Mr.

Crawford remained in an intact home, but around the age of four (4), his parents divorced. After going between the homes of his mother and father, Mr. Crawford eventually remained with his father and was raised on the family farm in Charlton, New York.  Mr. Crawford graduated from Burnt Hills-Ballston Lake Central School in 1982.  At the age of eighteen, Mr. Crawford moved out of the family home and moved to Ballston Spa, New York.

In 1985, Mr. Crawford joined the United States Naval Reserves. Mr. Crawford was a Reserve member for six years, and remained in individual ready reserve until 1993. While in the Naval Reserves, Mr. Crawford was a member of the Construction Battalion and was responsible for building on bases and a myriad of other construction projects and field exercises.  In 1993, Mr. Crawford was honorably discharged from the United States Naval Services.

While in the Reserves, Mr. Crawford married his wife, Angela Crawford and three sons were born to this marital union.  Their sons are now twenty-four, nineteen and fifteen years of age.  Mr. Crawford's oldest son is a member of the National Guard, the middle son attends college at Hudson Valley Community College and the youngest is still in high school.

From 2000 until his arrest in 2013, Mr. Crawford was employed at General Electric in Schenectady as a maintenance mechanic and machine repairman.  His duties included repairing machines and general preventative maintenance.  In this position, Mr. Crawford was able to support his family and enabled his wife to remain home with their children until they were of school age.  He was also able to build his first home which he did in 2006.

Mr. Crawford has always been an active member of The Barkersville Church and over the years, he held several different positions, including Deacon and Trustee. Mr. Crawford was known as an individual who helped others and he was an active participant in fundraisers, charities and overall assistance for anyone in need. In 2012, Mr. Crawford sponsored a Chinese family, and assisted them in immigrating to the United States. In short, Mr. Crawford was known as a person who put the needs of others above his own needs. His neighbors, his colleagues, and just about anyone who asked Mr. Crawford for help, received the assistance that they needed.

Mr. Crawford has had no contact with the law, other than the instant offense.

There are numerous letters of reference that will be submitted to the Court for its review prior to sentencing.

### III. The Offense

The Indictment reads as follows:

**Count One (Attempt to Produce and Use a Radiological Dispersal Device)**

From at least in or about April 2012, to on or about June 18, 2013, in Albany, Rensselaer, Saratoga and Schenectady Counties in the Northern District of New York, and elsewhere, in an offense occurring in and affecting interstate and foreign commerce, defendant Glendon Scott Crawford, without lawful authority, did knowingly attempt to produce, construct, acquire, transfer, receive, possess, and use a device capable of and designed and intended to endanger human life through the release of radiation and radioactivity, specifically an industrial-grade x-ray system that the defendant planned to modify so that it could be activated from a remote location, all for the purpose of causing serious injury and death to human beings, in violation of Title 18, United States Code, Section 2332h(a)(& (c)(1).

**Count Two (Conspiracy to Use a Weapon of Mass Destruction)**

From in or about the summer of 2012, to on or about June 18, 2013, in Albany, Rensselaer, Saratoga, and Schenectady Counties in the Northern District of New York, and elsewhere, defendant Glendon Scott Crawford and others, without lawful authority, conspired to use a weapon of mass destruction, specifically a modified industrial-grade x-ray system designed to release radiation at a level dangerous to human life, against persons and property within the United States, and traveled in

interstate commerce in furtherance of such offense, in violation of Title 18, United States Code, Section 2332a(a)(2)(C).

**Count Three (Distribution of Information Relating to Weapons of Mass Destruction)**

Beginning in or about April of 2012, and continuing through June 18, 2013, in Albany, Saratoga, and Schenectady Counties in the Northern District of New York, and elsewhere, defendant Glendon Scott Crawford did knowingly teach and demonstrate the making and use of a weapon of mass destruction, and did knowingly distribute information pertaining to, in whole or in part, the manufacture and use of a weapon of mass destruction, with the intent that the teaching, demonstration, and information be used for, and in furtherance of, an activity that constitutes a Federal crime of violence, including a violation of Title 18, United States Code, Section 2332a (use of weapons of mass destruction), all in violation of Title 18, United States Code, Section 842(p)(2)(A).

**Count One:** The proof at trial was that the x-ray device was an industrial grade x-ray device that was purchased by the government. While Mr. Crawford obtained a set of remote-controller connections, the remote was never attempted to be retrofitted to the x-ray device and the device itself was never made "capable of and designed or intended to endanger human life". Given that he did not attempt to transform the device from a lawful industrial grade x-ray device into a "weapon", his actions never reached the level of an "attempt". Mr. Crawford was not charged in this Count with a "conspiracy" to produce or use a radiological dispersal device. He was charged with "attempt" and the government's theory of "planned to modify" is not an attempt to "produce, construct, acquire, transfer, receive, possess" or "use" a device.

Mr. Crawford continues to object and maintains that he never intended to use the x-ray device and that he never actually possessed the x-ray device itself. The x-ray device was the same type of device that is used in commercial non-destructive testing, and which is readily available throughout the country. Without such device being brought together with any other equipment, there is no weapon. Mr. Crawford also would like it noted that he actually declined to perform any modification once there was an opportunity.

Mr. Crawford further objects to being prosecuted under Count 1 because it is his belief that the conduct criminalized by this Count is inapplicable to him.  That is, Mr. Crawford believes that the conduct prohibited by the sections cited therein applies to radiological dispersal devices, also known as "dirty bombs".  In other words, the section as charged prohibits the release of radioactive nuclides.  Mr. Crawford maintains that he never intended to endanger human life through the release of radiation or of radioactive nuclides.

**Count Two**

As noted above, there was never a "weapon" produced because the industrial grade x-ray machine was never modified.  None of the conversations involving Mr. Crawford rose to the level of conspiracy to "use" (2332(a)) the government's x-ray device, and the x-ray device never became a "weapon" (2332a(a)). Thus, without the transformation from a common x-ray device to weapon, there could not be a 2332a conspiracy to "use" it.  While there were numerous conversations regarding locations for this device, there still was never the modification.   Moreover, Mr. Crawford never had any intend to use such weapon and repeatedly told the government that he was just the technical advisor.  Mr. Crawford maintains that he repeatedly made the agents aware that that he wanted no part of its actual use.

There was a legal, industrial grade x-ray machine that can be ordered across the country for legitimate commercial uses.  This was never modified and, as such, there was never a weapon.  Thus, there could not be a legal "conspiracy" to use a weapon when one did not exist.

In addition, defendant respectfully submits that the statute under which he was convicted in this Count was enacted to deal with devices which are "designed to *release*

radiation or radioactivity at a level dangerous to human life." 18 U.S.C. § 2332a(c)(2)(D) See In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 107 n. 12 (2d Cir. 2008). As was pointed out several times during defendant's trial, including by the Government's own expert, the device in question here was only capable of an "emission" of radiation. Federal appellate courts have recognized this as a legally significant distinction. See Bituminous Cas. Corp. v. Advanced Adhesive Tech., Inc., 73 F.3d 335, 338 (11th Cir. 1996). Thus, defendant respectfully requests that the Court give full effect to Congress' intent, as expressed in the carefully-chosen wording of these statutes.

**IV.    Sentencing Guideline Calculation**

The defense does have objections to the guideline calculations as set forth in the presentence report.

Defendant objects to the twelve levels being added under "Victim Related Adjustment".  U.S.S.G. § 3A1.4(a).  The Sentencing Guidelines authorize a 12–level enhancement and increase in Criminal History Category to Category VI for a felony that "involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4. To be a federal crime of terrorism, the offense must be "calculated to influence or affect the conduct of the government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5). Application of the enhancement requires proof of the defendant's specific intent, i.e., proof that he "acted with the purpose of influencing or affecting government conduct and planned his or her actions with this objective in mind." *see United States v. Wright,* 747 F.3d 399, 404 (6th Cir.2014); 18 U.S.C.A. § 2332b. In this case, there was no offense that was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.  Thus, Mr. Crawford maintains that he should not be subject to the 12-level enhancement.

Defendant further objects to each of the 2-level enhancements that he abused a position of public or private trust, or used a special skill and that he was an organizer, leader, manager, or supervisor in any criminal activity in any criminal activity other than described in U.S.S.G 3B1.3(a) or (b).

**REQUEST FOR DOWNWARD DEPARTURE**

A district court may depart from a recommended guideline range if it finds "'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " Guidelines § 5K2.0 (quoting 18 U.S.C. § 3553(b)).

    A.    **Departure for Minimal Role - §5K2.0**

There was no testimony that Mr. Crawford ever took possession of the device or that he ever intended to use the device.  Moreover, there was no modification of the device. On March 11, 2012, in a recorded conversation, Mr. Crawford made clear that he would only be "a service guy for your machinery." On June 29, 2012, in another recorded conversation, Mr. Crawford stated that he was just going to be the technical advisor and on July 20, 2012, he indicated that he would not be capable of using the machine.  Repeatedly and throughout the course of the investigation, Mr. Crawford relegated himself to the technical person and never intended any use of the device.

Defendant proposes that this Court reduce the Offense Level to a level at which the Court can sentence Mr. Crawford to a period that is sufficient, but not greater than necessary, to meet the ends of sentencing.

### B.   Non-Guidelines Sentence – Alternative to § 5K2.0

#### 1.   Law

If the Court does not grant our downward departure motion, or if the Court disagrees with defense's objections to the guideline calculation as set forth in the presentence report, we move for a *Booker*, non-guidelines sentence and it is respectfully submitted that the sentencing factors set forth in 18 U.S.C. § 3553(a) warrant a lower sentence.  The presumption that a Guidelines sentence is reasonable does not *require* the sentencing judge to impose that sentence and in determining a reasonable sentence, " *…the sentencing court does not enjoy the benefit of a legal presumption that the Guildelines sentence should apply*.  *Booker*, 543 U.S., at 259-260, 125 S.Ct. 738." *Id*. at 2465 (emphasis added).

The Second Circuit in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005) specifically authorized the district court to impose a non-guidelines sentence, even in cases where a sentencing guidelines downward departure would not ordinarily be warranted. The court stated as follows:

> "…the sentencing judge should decide, after considering all the other factors set forth in section 3553 (a), whether (i) to impose the sentence that would have been imposed under the Guidelines, *i.e.*, a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence." *Id.* at 113.

In *United States v. Jones*, 460 F.3d 191 (2d Cir. 2006), the district court imposed a non-guidelines sentence of 15 months rather than the guidelines sentence of 30-37 months. The Second Circuit in affirming the sentence rejected the Government's argument that the district court had erroneously relied upon factors such as the defendant's "…education, emotional condition, favorable employment record, family support, and good record on

state probation [because] the Sentencing Commission has concluded [such factors] are 'ordinarily' not relevant 'in determining whether a departure is warranted.'" *Id.* at 194. The Second Circuit responded to this argument as follows:

> "By citing the Guidelines' departure standards, however, the Government fails to appreciate that Jones's post-*Booker* sentence is not a Guidelines departure; it is a non-Guidelines sentence. See *Crosby*, 397 F.3d at 111 n. 9. With the entire Guidelines scheme rendered advisory by the Supreme Court's decision in *Booker*, the Guidelines limitations on the use of factors to permit departures are no more binding on sentencing judges than the calculated Guidelines ranges themselves." *Id.*

The *Jones* court went on to hold, as follows:

> *"Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553 (a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances.* That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness…We decline to impose a requirement for such specific articulation of the exact number of months of an imposed sentence. Selection of an appropriate amount of punishment inevitably involves some degree of subjectivity that often cannot be precisely explained …*Judge Larimer's reasons for the non-Guidelines sentence he imposed, even if not 'ordinarily' grounds for a pre-Booker guidelines departure and even though influenced in part by his subjective assessment of the Defendant, are adequate to support his conclusions that a post-Booker non-Guidelines sentence was appropriate for Eric Jones, and they suffice to satisfy the statutory requirement to state 'the reasons for [the court's] imposition of the particular sentence.'"* (emphasis added). *Id.* at 195.
>
> See also, *United States v. Castillo*, 460 F.3d 337, 356 (2d Cir. 2006) (reaffirming

*Jones'* holding that "a district court may consider 'the judge's own sense of what is a fair and just sentence under all the circumstances.'")

After considering all the factors that the Court must consider, it is respectfully submitted that a sentence lower than the Guideline range is appropriate pursuant to 18 USC §§3853(d) and 3563(b)(19) would satisfy all the factors under §§ 3553(a)(1)-(7).

**2. Section 3553 (a) (2) Factors**

An analysis of all the factors the court must consider compels the conclusion that a sentence less than the Guideline range would satisfy all the factors under §§3553 (a)(1)-(a)(3) and (a)(6)-(a)(7).  That is, this case is appropriate for a non-guidelines sentence in view of Mr. Crawford's (1) lack of any prior criminal record, (2) family circumstances, (3) employment history of working long, hard hours, (4) fact that Mr. Crawford may be viewed as having a minimal role, and (5) that Mr. Crawford never intended to use this device.  A non-guidelines sentence of ninety-seven months (reflecting what the co-defendant Eric Feight received) is entirely reasonable under all these circumstances.

We ask the court to consider our analysis of the following four sentencing factors as they apply to this case. In so doing, we believe the court will conclude that a sentence of will be "sufficient, but not greater than necessary" to comply with the four purposes of sentencing under §3553 (a) (2).

    **a. (a)(2)(A) -   The Seriousness of the Offense, Respect for the Law and Just Punishment**

Mr. Crawford understands the seriousness of the offenses, but he steadfastly maintains his innocence for the crimes for which he has been convicted. Mr. Crawford has never had and continues to have nothing but respect for the law.  He has never had contact with the law and has otherwise always led a law abiding life.

    **b. (a)(2)(B) - General Deterrence**

The felony conviction and a similar sentence to that of co-defendant Eric Feight of nine-seven months is likely to be adequate punishment to promote deterrence of future

criminal conduct for the type of offenses charged herein.  As indicated throughout this memorandum, Mr. Crawford has never had contact with law enforcement and has never had a problem following the law.  It is clear that the charges and actions alleged in this Indictment are an aberration from the normal law-abiding life that Mr. Crawford lived for fifty years.  A felony conviction, as well as separation from his family for this amount of time, is devastating punishment in and of itself for an otherwise law-abiding individual.

### c. (a)(2)(C) - Protection of the Public

It is respectfully suggested that a sentence of more than ninety-seven months is not necessary to protect the public from this defendant. Mr. Crawford has no history of any criminal behavior, and he has lived nothing but an ordinary life, working and taking care of his family.  There is no doubt that Mr. Crawford will return to this life.

### d. (a)(2)(D) – Need for Education, Training, Medical Care, et al.

This factor is not relevant to this case.

### 3. Sections 3553 (a)(1) and (a)(3)- (a)(7) Factors

A review of the following additional sentencing factors also supports a sentence of less than the Guideline sentence:

### a.  (a)(1) -    Nature and Circumstances of the Offense and History of the Defendant

As noted previously herein, Mr. Crawford has no criminal history, and there is nothing about the offense charged that indicates that Mr. Crawford was acting in a complete disregard for the law.

### iv. Combination of Factors

We ask the court to consider the combination of Mr. Crawford's criminal history, his family situation, as well as the fact that he has been incarcerated for over the past three

(3) years, and the negative impact that incarceration would have on her family in fashioning a reasonable sentence in this case.

### b. (a)(3) -Kinds of Sentences Available

The court has the authority to sentence defendant to a term less than the Guidelines recommendation.

### c. (a)(4) and (a)(5) – Advisory Guideline Range
See *supra* at ¶ IV (A).

### d. (a)(6) - Sentencing Disparity

Eric Feight was sentenced to ninety-seven months and a sentence greater than this for Mr. Crawford would be unwarranted.  Although there are allegations throughout that Mr. Crawford was the recruiter and leader, Mr. Crawford did not do any modifications to the x-ray device.  Mr. Feight on the other hand did, in fact, create the remote control that could have been utilized.  Thus, Mr. Feight actually took a more active role and affirmatively created a device that could have been utilized.

### e. (a)(7) –Restitution

This is not a factor applicable in this case.

## F. Fine

As noted in the PSR, Mr. Crawford does have the resources to pay a fine.  Any fine, however, would have an adverse impact on his dependents, more than it would serve to punish him.

## V. Conclusion

For all the foregoing legal and factual reasons, we believe that a sentence of ninety-seven months is "sufficient, but not greater than necessary" to fulfill all the statutory requirements of sentencing.

Dated: November 14, 2016

        Respectfully submitted,

        s/_____Danielle Neroni_____
        Danielle Neroni
        Bar Roll No.: 513736
        Attorney for Glendon Scott Crawford
        668 Madison Avenue
        Albany, New York 12208
        (518) 366-6933 / (518) 453-0173